IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DELBERT SAWYER PLAINTIFF

v. Civil No. 07-2032

TRANE U.S. INC. DEFENDANT

MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant's motion for summary judgment (Doc. 10), Plaintiff's response (Doc. 15), Defendant's reply (Doc. 20) and supporting pleadings. Plaintiff Delbert Sawyer claims Defendant Trane U.S. Inc. violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12101 *et seq.*, and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*, in discriminatorily discharging Plaintiff because he was over 40-years-old and perceived by Trane to be disabled.[2]

As reflected herein, the Court finds Plaintiff fails to create genuine issues of material fact as to whether he is disabled within the meaning of the ADA and ACRA and as to

---

[1] Plaintiff's complaint implicates the ADA while erroneously citing Title VII. The pleadings, however, treat the dispute as a claim under the ADA, and Defendant's motion contains a thorough ADA analysis. Plaintiff does not allege a cause of action under Title VII. Thus, the Court analyzes Defendant's motion as challenging claims under the ADA.

[2] The ADA definition of "disabled" includes "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C).

whether his age played a part in his termination. Accordingly, Defendant's motion should be and is hereby **GRANTED** as to each of Plaintiff's claims, and Plaintiff's claims under the ADA, ADEA and ACRA are **DISMISSED WITH PREJUDICE.**

## I. Background

Trane operates an air conditioner manufacturing plant in Fort Smith, Arkansas. On or about February 27, 2007, Trane hired Plaintiff, who was 45-years-old, as a machine set-up operator. When Plaintiff applied for a position at Trane, Plaintiff indicated on a medical questionnaire that he received V.A. disability benefits.[3] (Ex. 4)

As an hourly employee, Plaintiff's employment was subject to a Collective Bargaining Agreement ("CBA") with the United Auto Workers ("UAW"), Local 716. Under the CBA, new employees are subject to a ninety-day probationary period, during which

---

[3] Prior to his employment with Trane, Plaintiff was honorably discharged from the United States Navy. The Department of Veterans Affairs classified Plaintiff as disabled due primarily to sleep apnea, shoulder impingement and tendinitis in Plaintiff's heel. (Sawyer Depo. pp. 17-18.) The Navy did not consider Plaintiff to be disabled. (Sawyer Depo. pp. 18.) The parties agree that Plaintiff's conditions in no way affected Plaintiff's ability to perform his work functions. (Doc. 12 ¶ 6; Doc. 17 ¶ 6.) The record is unclear as to the time period when Plaintiff received disability pension from the VA.



AO72A
(Rev. 8/82)

even one occurrence[4] absence is cause for termination. During Plaintiff's probationary period, he had no absences and received good evaluations from his supervisor, Louis Stutts. However, subsequent to the completion of Plaintiff's probationary period, Plaintiff received five absences in four months.[5] Under Trane's "no fault" attendance policy,

---

[4] An occurrence is defined as an absence of indefinite length attributable to a single cause, such as an illness.

[5] Plaintiff contents the five absences should not be counted against Plaintiff's attendance record because they were the result of "workers' compensation injuries that Mr. Sawyer suffered." (Doc. 17 ¶ 20.) As described more fully below, Plaintiff was injured at work on May 9, 2006 and August 4, 2006. He had no absences due to his May 9 injury. Following his August 4 injury, Plaintiff sought medical attention on or about August 11, 2006 and, following his medical consultation, received two weeks of leave from work to recover. (Sawyer Depo. p. 38.) However, the five absences counted against his attendance record were not part of that workers' compensation leave and unrelated to Plaintiff's reported injuries.

Subsequent to his May 9 injury and prior to his August 4 injury, Plaintiff was absent on five occasions. (Ex. 15) Plaintiff testified that he missed hours of work on June 16, 2006 to attend a dental appointment, (Sawyer Depo. p. 25.), on July 10, 2006 and June 11, 2006 to apply for a vocational rehabilitation degree program with Veteran's Affairs, (Sawyer Depo. p. 25.), on July 13, 2006 to attend an appointment at the V.A. in Fayetteville, Arkansas for a purpose the Plaintiff cannot recall, (Sawyer Depo. pp. 26-27; Ex. 15), and on July 20, 2006 because his "thumbs were starting to act up." (Sawyer Depo. p. 27.) Of the five absences, Plaintiff suggests only the July 20, 2006 absence was related to work. (Sawyer Depo. p. 46.)

Thus, Trane did not count against Plaintiff any absences due to his reported work-related injuries for which he receive workers' compensation leave.



AO72A
(Rev. 8/82)

Plaintiff's accumulation of four occurrences required the issuance of a "Four Occurrence Letter," the first step in Trane's disciplinary procedure.[6]

Also during the time period following Plaintiff's completion of his probationary period, there was discord between Plaintiff and his supervisor, Stutts. Stutts contends Plaintiff began to display a "problem with authority" that escalated into an argument. (Stutts Depo. pp. 5, 9; Doc. 12 ¶ 17.) Plaintiff describes the argument as an "altercation" in which Plaintiff confronted Stutts regarding frequent changes in the priorities of the production line. (Sawyer Depo. p. 33.) Plaintiff explains that the changing priorities "drove [him] nuts" so he "told Louis . . . what the hell is going on? . . . I can't do my job efficiently if you keep changing my priorities." (Sawyer Depo. p. 33.)

On August 4, 2006, Plaintiff reported that he injured his wrist on a machine in the coil shop.[7] Plaintiff reported that

---

6 Plaintiff contends that he did not receive a Four Occurrence Letter because his absences were "approved industrial injury leave." (Doc. 17 ¶ 22.) Throughout Plaintiff's Response To Defendant's Statement of Material Facts Not In Dispute (Doc. 17), Plaintiff maintains his absences were excused as workers' compensation leave. However, as described above, Plaintiff testified that four of his absences were unrelated to his work injuries and no absences were related to reported work injuries for which he took leave.

7 There is evidence that Plaintiff was also injured on May 9, 2006. On that date, Plaintiff reported a work injury



AO72A
(Rev. 8/82)

he experienced pain in his wrist after his wrench slipped as he was tightening a nut. (Ex. 10) Stutts doubted that Plaintiff injured himself in the manner described because, in Stutts' ten years supervising the coil shop, no employee had been injured while working on the machine. (Ex. 12 p. 2.) Plaintiff worked five days after he injured his wrist before he sought medical treatment. (Sawyer Depo. p. 38.) On or about August 11, 2006, Plaintiff sought a medical consultation. Plaintiff was apparently diagnosed with a ligament strain.[8] The examining physician recommended that Plaintiff take time off work to allow the injury to heel. (Sawyer Depo. p. 38.) Plaintiff was given two weeks of workers' compensation leave. (Doc. 16 p. 5.)

On September 20, 2006, in anticipation of Trane's seasonal layoff, Trane supervisors completed so-called "Lack Of Work" or "LOW" evaluations, in which they evaluated and

---

involving a laceration to his right forearm. According to his attendance record, Plaintiff did not incur any absences as a result of that injury. (Ex. 15) Plaintiff's wrist injury occurring on August 4, 2006 forms the primary basis of Plaintiff's claims, and little is made of the injury occurring on May 9, 2006.

[8] While, in pleadings, Plaintiff argues that Trane "tries to down play the injuries of Mr. Sawyer as only a ligament strain," (Doc. 16 p. 5.), Plaintiff characterized the injury as a "ligament strain" in his statement to Trane, made on August 28, 2008, concerning treatment he received at the V.A. hospital. (Ex. 11) Plaintiff does not allege his injury involved anything other than a ligament strain.



AO72A
(Rev. 8/82)

made recommendations for rehiring employees who would be laid off. Stutts made a recommendation against rehiring Plaintiff.[9] (Ex. 12) Stutts indicated that Plaintiff's conduct was poor. (Ex. 12) In a space provided for comments concerning matters not reflected in the LOW evaluation questionnaire, Stutts noted that he believed Plaintiff injured himself outside work and claimed falsely to have injured himself while at work. (Ex. 12) Stutts expressed concern that Plaintiff would "try for a medical reason to be off permanent." (Ex. 12)

On or about September 22, 2006, Trane laid off 147 employees, including Plaintiff. Directly following the layoff, Trane estimated it would need to recall approximately 10 employees within one month of the layoff. Among the 147

---

9

Trane contends that Stutts made that recommendation based on Plaintiff's "resistance to Stutt's authority" and "because he did not believe Plaintiff when he said he was injured on-the-job . . . ." (Doc. 12 ¶ 30) Plaintiff contends Trane's explanation for Plaintiff's termination is "a pretext for discrimination." (Doc. 17 ¶ 27.)

Plaintiff denies repeatedly that Plaintiff was terminated based on his attendance problems. (Doc. 17 ¶ 37; Doc. 16 pp. 2, 5-8.) Plaintiff contends that "the proffered reason of four occurrences has been admittedly thrown in the garbage heap by the testimony of Stutts." (Doc. 16 p. 8.) Stutts testified that he did not consider Plaintiff's attendance problems when he recommended that Plaintiff not be rehired. (Stutts Depo. p. 11.) However, as described above, Trane contends Plaintiff was discharged due to his LOW evaluation and recommendation against rehire, not his Four Occurrence Letter or attendance problems. (Doc. 12 ¶ 30.)



AO72A
(Rev. 8/82)

employees laid off, Plaintiff was among the first 10 people who were eligible for recall. Of those 10, three employees, including Plaintiff, had recommendations against rehire. To avoid recalling employees with recommendations against rehire, Trane sent termination letters to those employees, including Plaintiff.[10]

## II. Standard of review

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* at 248. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of

---

[10] Plaintiff denies Trane's explanation for the termination letters, arguing they were "not based on four occurrences, but on other independent recommendations." (Doc. 17 ¶ 37.) However, as described above, Trane contends the terminations were based on the LOW evaluation recommendations against rehire and not on four occurrence letters. (Doc. 12 ¶ 37.)

establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-57 (citing Fed. R. Civ. P. 56(e)). In order to withstand a motion for summary judgment, a plaintiff must substantiate its allegations with "sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913 (1993) (quotations and brackets omitted). A mere scintilla of evidence is insufficient to avoid summary judgment. *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994).

**III. Discussion**

Plaintiff alleges age discrimination in violation of the ADEA and ACRA. (Doc. 2 ¶ 8.) Plaintiff alleges disability discrimination in violation of the ADA and ACRA because he was "perceived as disabled" by Trane. (Doc. 2 ¶ 12; Doc. 16 p. 1.)



AO72A
(Rev. 8/82)

**A. Plaintiff's claims of age discrimination under the ADEA and ACRA**

Plaintiff alleges that he was discharged due to his age. (Doc. 2 ¶ 8; Doc. 16 p. 15.) Plaintiff was 45-years-old during his employment with Trane and thus a member of the class of employees 40-years-old and older protected by the ADEA. To establish a *prima facie* case of age discrimination, a plaintiff must put forth evidence adequate to create an inference that an employment decision was based on age. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). Plaintiff fails to make an argument or put forth evidence supporting a claim under the ADEA. There are no facts in the record suggesting Plaintiff's age was considered or mentioned by Stutts or any of Plaintiff's superiors in connection with his termination or otherwise. Plaintiff does not allege that Stutts or any of Plaintiff's superiors gave him any reason to believe his age played a part in his termination. (Sawyer Depo. p. 51.) Instead, Plaintiff contends that "there was no good reason to terminate me" and that he believes he was discharged due to his age because "that's the only thing I could think of. There's no other reason to fire me." (Sawyer Depo. p. 48-49.) Plaintiff's deposition continues:

> Q: But if I understand then the reason that you think it was either your age and/or your disability or perceived disability that . . .



AO72A
(Rev. 8/82)

motivated the decision to terminate you was simply because you couldn't come up with any other explanation?

A: Because there's no other reason to fire me. None whatsoever.

(Sawyer Depo. 50.) Without any affirmative evidence suggesting age played a part in Plaintiff's termination, and with only Plaintiff's speculations concerning the motivation behind his termination, the Court must find Plaintiff fails to create a genuine issue of material fact as to his claim of age discrimination under the ADEA.

Plaintiff's age discrimination claims must also fail under ACRA, as ACRA, unlike the ADEA, does not protect against age discrimination a class of individuals ages 40 and older. *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 826 (E.D. Ark. 1996).

**B. Plaintiff's claims of disability discrimination under the ADA and ACRA**

ADA disputes are analyzed under the burden-shifting analysis created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Burchett v. Target Corp.*, 430 F.3d 510, 516 (2003). Under the *McDonnell Douglas* test, Plaintiff bears the initial burden of establishing a *prima facie* case for discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case under the ADA, Plaintiff must demonstrate (1) his condition qualifies as a disability within

the meaning of the ADA, (2) he is qualified to perform the essential functions of his position, and (3) he has suffered an adverse employment action due to his disability. *See Samuels v. Kansas City Missouri School Dist.*, 437 F.3d 797, 801 (8th Cir. 2006). Trane concedes that Plaintiff can perform the essential functions of his job and that Plaintiff suffered an adverse employment action. (Doc. 11 p. 11.) Thus, the dispositive issues are whether Plaintiff puts forth affirmative evidence creating genuine issues of material fact as to whether he is disabled within the meaning of the ADA and whether Plaintiff's termination was motivated by Trane's knowledge of that disability.

Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities," 42 U.S.C. § 12102(2)(A), "a record of such an impairment," 42 U.S.C. § 12102(2)(B), or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). Plaintiff does not allege that he suffers from an impairment that substantially limits a major life activity and admits that he is not disabled. (Doc. 12 ¶ 8; Doc. 17 ¶ 8.) Rather, Plaintiff relies on § 12102(2)(C) to allege he was "perceived as disabled" by Trane. (Doc. 2 ¶ 12; Doc. 16 p. 1.)

Relevant regulations offer guidance in determining when an ADA plaintiff is regarded as having an impairment under §



AO72A
(Rev. 8/82)

12102 (2)(C). *Wilson v. Georgia-Pacific Corp.*, 4 F. Supp. 2d 1164, 1170-71 (N.D. Ga. 1998). Those regulations state that an employee "[i]s regarded as having such an impairment" when the employee:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). It is critical to note that under each alternative theory of perceived disability "[r]egarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability." *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006). A perception of disability "is only to be considered a qualifying disability if the employer perceives the disability to substantially limit a major life activity. *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998). "Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,

284 F.3d 35, 47 (2d Cir. 2002) (citing 28 C.F.R. § 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii); 24 C.F.R. § 100.201(b)). To be substantially limited "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002).

Plaintiff relies primarily on his wrist injury to establish that Trane perceived him to have a disability. Plaintiff also suggests that Trane's knowledge of Plaintiff's V.A. benefits might have caused Trane to perceive Plaintiff as disabled. However, pursuant to the procedures described above, Plaintiff must show he was perceived to have a condition or injury that substantially limited a major life activity by severely restricting his ability to perform, for example, his job functions or manual tasks. Plaintiff fails to make an argument or present evidence to support the contention that Trane perceived Plaintiff as limited with respect to any major life activity.

Plaintiff offers no evidence suggesting Stutts or any Trane employee believed or had reason to believe Plaintiff's wrist injury was of such severity. That injury was apparently a temporary condition, considered by Plaintiff's physician to require two weeks to heal and for which Plaintiff received two



AO72A
(Rev. 8/82)

weeks of workers' compensation leave. Nothing in the record suggests Trane would have reason to believe, after Plaintiff returned from leave and resumed work, that Plaintiff's injury would cause a continuing disability. As Plaintiff was recovered and back at work at the time of his discharge, his injury cannot provide a basis for determining Plaintiff was perceived as disabled when his employment was terminated.

Further, the evidence does not support the contention that Plaintiff's injury might have appeared to Trane to be severely restrictive of major life activities. Plaintiff reported to Trane that his injury was a ligament strain. (Ex. 11) Plaintiff worked five days after he injured his wrist and before he sought medical treatment, (Sawyer Depo. p. 38.), giving Trane no reason to believe the injury was debilitating. Stutts testified that, following Plaintiff's wrist injury, Plaintiff could perform his work functions. (Stutts Depo. p. 12.) Stutts further testified that he had no reason to believe Plaintiff's injury would be permanent. (Stutts Depo. p. 12.) Stutts never indicated to Plaintiff that Stutts believed Plaintiff to be disabled.[11] Plaintiff does not allege

---

[11] In pleadings, Plaintiff denies this contention based solely on a citation to Stutts' deposition, stating that Stutts was concerned Plaintiff would try to take permanent disability. (Doc. 17 ¶ 11.) However, Plaintiff testified in his deposition that Stutts "[n]ever said a word" to indicate that Stutts thought Plaintiff was disabled. (Sawyer Depo. p. 48.)

any facts on which the Court could conclude that his wrist injury was perceived to amount to a disability within the meaning of the ADA. At most, it seems his injury was a temporary condition, requiring two weeks of leave and having, at most, minor residual effects on Plaintiff's work performance. The Court cannot conclude that such a condition caused Trane to regard Plaintiff as being severely restricted in the performance of major life activities.

While Plaintiff informed Trane on his medical questionnaire that he received V.A. disability compensation, (Ex. 4 p. 7.), there is no evidence that Trane inquired into or was made aware of the nature, extent or duration of Plaintiff's conditions. Trane hired Plaintiff with knowledge of the disability benefits. There is no evidence suggesting that Trane later determined those benefits represented impairments that substantially limited Plaintiff in performing major life activities. If Plaintiff could establish disability under the ADA, the medical questionnaire could be strong evidence of knowledge on the part of Trane. However, there is no evidence to suggest Trane was aware of what ailments Plaintiff had or if he currently had any. A general knowledge of V.A. benefits cannot establish that Trane perceived Plaintiff to have certain impairments that severely



AO72A
(Rev. 8/82)

restricted Plaintiff's ability to perform his work functions or manual tasks. Plaintiff admits his ailments interfere in no way with his ability to perform his work functions. (Doc. 12 ¶¶ 5, 6, 8; Doc. 17 ¶¶ 5, 6, 8.) Thus, Trane would have no indication from Plaintiff's work performance that he suffered from any impairments or of the nature and extent of those impairments. Stutts testified that he was never given reason to believe Plaintiff was disabled, (Stutts Depo. p. 11), and Plaintiff does not allege that anyone at Trane ever indicated to him that they regarded him as having a disability.

Rather, Plaintiff contends that a perceived disability must be the cause for his termination because "[t]here's no other reason to fire me."[12] (Sawyer Depo. P. 48.) On those facts, the Court cannot conclude there is sufficient evidence to create a jury question as to whether Trane would mistakenly

---

12 While the Court need not reach the issue of whether Trane had a legitimate reason for discharging Plaintiff, it is relevant here to note that the altercation Plaintiff had with his supervisor, in which Plaintiff demanded Stutts explain "what the hell is going on" concerning the priorities of the manufacturing line, (Sawyer Depo. p. 33.), along with Stutts noting poor conduct on Plaintiff's LOW evaluation and expressing concern regarding the veracity of Plaintiff's claims of injury, provide evidence of a legitimate reason for Plaintiff's termination apart from a perceived disability.

Plaintiff denies Trane's explanation for his termination based on a general citation to the entire deposition of Louis Stutts. (Doc. 17 ¶ 40; Doc. 12 ¶ 40.) The Court finds no evidence in that deposition contradicting Trane's contentions.

perceive Plaintiff's impairments to be sufficiently severe as to substantially restrict a major life activity.

The primary affirmative evidence offered by Plaintiff is his LOW evaluation in which Stutts expressed concern that Plaintiff would "try for a medical reason to be off permanent." (Ex. 12) If Plaintiff could establish a perceived disability, Stutts' statement would be strong evidence of discriminatory motive. However, that statement alone, while unfounded, speculative and perhaps an example of poor judgment on the part of Stutts, does not evidence a belief that Plaintiff suffered from an *actual disability*, as is required to support an action under the ADA. Stutts statements in Plaintiff's LOW evaluation read in their entirety:

> [Plaintiff] was hurt and off two weeks with a wrist injury. I have had the coil shop for 10 years. No one has ever gotten hurt on that machine. I believe he [] had this injury before he came to work here or hurt it outside at his home. I believe he will try for a medical reason to be off permanent.

(Ex. 12) It is unclear whether Stutts' concern was that Plaintiff would feign future injury or attempt based on his wrist injury to "be off permanent." While both concerns seem unsubstantiated and unreasonable, neither concern is actionable under the ADA as the motivator of an adverse employment action because there is no evidence that Stutts

perceived Plaintiff to suffer from an actual condition or injury that amounted to a disability. In other words, Stutts' expressed concern that Plaintiff would "try" to receive permanent benefits, suggesting Plaintiff would attempt to falsely claim disability, not that Plaintiff would be entitled to benefits based on an actual disability. The evidence does not support such a reading of Stutts' statements because there is no evidence indicating Stutts perceived Plaintiff to be disabled.

The Court cannot conclude that Plaintiff's LOW evaluation alone is sufficient to create a genuine issue of fact as to whether Plaintiff is disabled within the meaning of the ADA. Thus, the Court finds Plaintiff fails to create a genuine issue of fact as to whether Trane regarded Plaintiff as having a disability within the meaning of the ADA. The Court need not determine whether Trane based the decision to terminate Plaintiff's employment on such disability.

As to Plaintiff's claim of disability discrimination under ACRA, the Court notes that ACRA "differs materially from the federal [ADA]" in the respect that "there is no express provision for a cause of action for one who is simply 'regarded as' having a disability by others." *Faulkner v. Arkansas Children's Hosp.*, 69 S.W. 3d 393, 401 (Ark. 2002). When the plaintiff in *Faulkner* appealed to the Arkansas



AO72A
(Rev. 8/82)

Supreme Court "to extend the plain language of the Arkansas Civil Rights Act's definition of disability to include coverage for persons *regarded as* having a disability, the court "decline[d] to expand the statutory definition of disability in this manner as it would be akin to legislating." *Id.* at 402. Accordingly, Plaintiff's claim of discrimination is not cognizable under ACRA.

**C. Conclusion**

Based on the foregoing, the Court determines Plaintiff fails to create a genuine issue of material fact as to essential elements of each of his claims. Accordingly, Defendant's motion for summary judgment (Doc. 10) should be and hereby is **GRANTED** as to Plaintiff's claims under the ADA, ADEA and ACRA. As there are no claims remaining, Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED this 17th day of March 2008.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge



AO72A
(Rev. 8/82)